07-7008 Mr. Rafferty. May it please the court. We are here today to ask this court to set aside the final 35 words of the second subparagraph of section 14A of the VA's Code of Conduct. Let me ask you a preliminary question. In your surface challenge, are you challenging all of subparagraph 14 or only the provisions relating to partisan activities? Only the provisions related to partisan activities. That's a very important distinction between this case and Griffin. Griffin sought to get rid of all of paragraph 14. We are looking at the last 35 words, beginning with partisan activity, that is at the end of the second subparagraph. We are not trying to disturb the content-neutral restrictions on disorderly conduct or unreasonable noise. That is not part of our challenge. And Mr. Rafferty, you're only making a facial challenge. There's no as-applied challenge, correct? Because that's what I understand from page 8 of your brief where you say, the details of its actual application, meaning the regulation, must be litigated in that case, meaning the district court proceedings. Yes, there is an as-applied challenge in the district court. So we are not at all concerned with an as-applied challenge. We're only concerned with a facial challenge, correct? The only aspect in which we're pleading any facts whatsoever are for the purposes of distinguishing and establishing the credible risk of enforcement. But all we have before us is a facial challenge. All you have before you is a facial challenge. Okay. Just as a sort of a housekeeping question, if I might, what is the present status of the proceedings in the district court? There was a trial four weeks ago, a bench trial. On the as-applied challenge? On the as-applied challenge. In the pretrial order, the judge just indicated he basically was waiting for this court to make a decision and had delayed the trials in anticipation that there would be a ruling which could moot the as-applied challenge under the law of the Ninth Circuit. He has now said that he is monitoring this proceeding very closely. And it's our position that under the Ninth Circuit law, that if the regulation is found to be unconstitutional on its face, that then we are relieved from the further burdens of establishment. So presumably, what I understand you'd be saying is the district court judge has had a trial, but it sounds to me from what you're saying is that his intention is to hold off on rendering a decision with findings of fact and conclusions of law until this case is decided. Yes, but he has also said that he regards himself as under obligation to decide quickly and that he won't delay indefinitely. OK. Now, the next thing that I want to, you said that Griffin does not control this case. And there seem to be a number of places in the Griffin opinion where one could, with some reason, take the position that it does control. Do you have Griffin there? I don't have that. I'm familiar with the case. OK. Well, at 288, Fed 3rd, 1314, the court says we hold that the regulation does not on its face violate the First Amendment. Then at 288, Fed 3rd, 1318, the court says we know of no rule that would preclude our consideration of Mr. Griffin's non-flag allegations once his constitutional challenge is properly before the court. Then at 288, Fed 3rd, 1319, the court says we therefore conclude that no principle prevents us from considering the full scope of Mr. Griffin's challenge. And finally, at 288, Fed 3rd, 1322, the court says we shall assume that other VA properties are also non-public for and we need not consider how a facial challenge should weigh against a regulation that governs both public and non-public. And finally, I get the sense in his dissent that Judge Dyke, well, concur in part, dissent in part, criticized the majority for, in his view, deciding more than just the cemetery issue. So for those reasons, I apologize for being long-winded, but I wanted to frame the question for you. Given that, why isn't Griffin controlling? Well, the reason that Griffin is not controlling is that at page 1322, which you cited, the court specifically relied upon the fact that Mr. Griffin made no allegation that there was a risk of censorship at any VA property other than national cemeteries or that any person was desiring to speak at any other kind of VA property. At page 1326, he said there were no allegations that the rule will chill speech at any venue other than national cemeteries. The opinion went into great detail to say there was no allegation that any VA personnel had ever suggested enforcing this rule against partisan activity or against orations at any time from 1970 until 2002. So the only issue there, was partisan activity an issue in Griffin, or was it simply, what I'll say, quote, demonstrations, close quote, and quote, orations, close quote? The troubling part of Griffin is the last three paragraphs, because up to that point, they said, well, you know, this is very clear, this is about the flag manual. The flag manual is very precise, there's no discretion, but then when they start talking about sort of the housekeeping, cleaning up the loose ends and dealing with the peripheral parts of the facial challenge, that's when they get into the discretion, and yes, there's necessarily discretion. And they do address the partisan activity, but they say everyone understands what partisan activity is. And when you look at- All right, I understand what you're saying, sir. I don't want to take too much of your time. The next question I had was- Jack, if I may. Is it your position that Griffin is limited to cemeteries? Well, the Fourth Circuit has been very critical of Griffin on this issue of discretion. The primary vice of the statute is that it doesn't say, here's a defined class of political activity and you can't do it. It says you need authorization, or you have committed a crime if you don't have authorization, which nobody has bothered to get. Yes, but you haven't answered my question. So- I'd like to find out what your position is. You say Griffin, by the nature of the case, is such that all that it held was that the provision dealing with cemeteries was not unconstitutional on its face, rather than broadly subparagraph 14. Yes, I believe it cannot be extended beyond cemeteries, because in the Ninth Circuit, in this case, they rejected the notion that there could be a per se decision that VA properties are all non-public forum. They are not a military base. Mr. Strachan, let me ask you, as I understand the First Amendment jurisprudence, the first thing you have to do is consider what kind- we have a facial challenge here. We have to consider the forum, right? And you've got public forums, designated public, and non-public. Now, since you've mounted a facial challenge here, we have to look across the board at VA facilities, right? Yes. Now, I would understand that would mean the VA headquarters building, VA regional offices, VA hospitals, like the Menlo Park facility, and of course, cemeteries. Now, is there any other kind of a VA facility than what I just indicated? Yes. Why? Well, first of all, the VA headquarters has a very enlightened regime. No, no, no, I'm just talking about what kind of- I don't care about that. I'm just saying, I mentioned headquarters, regional offices, hospitals, cemeteries. What else is there that the VA has that we have to bear in mind? Well, at the Sepulveda Medical Center, for example, they have a golf course and they have- No, no, no, no, that's a medical center. It's a hospital, right? I'm just talking about general- I'm going to get to that point. Okay, within the hospitals, they have- So, those are the only kinds of general facilities, right? Yes, and I would just say very quickly that most of the regional offices and the headquarters are under the GSA, and they are outside this regulation. Okay. So, what is inside this regulation? Medical centers, most vet centers, I believe, but you don't really know. I've tried to research what is under the GSA and what is not under the GSA, and I haven't been able to get answers through- So, at least we can say a medical center similar to the Menlo Park. Menlo Park is a medical center. Yes. And that clearly is under it. With three streets, with parks, with a polling place in the middle of the campus. Now, what do you do if you have a facility like the Menlo Park facility? And this is, I think, my last question for you. What do you do if you have a facility like the Menlo Park facility that has places that are certainly non-public, in terms of the way that term is used in the First Amendment jurisprudence, and areas where the public can come on? What are we looking at? Well, if there are a substantial number of areas that the public can come on, such as parks, such as sidewalks that are not needed for immediate access, such as streets where you can drive in one way and drive out another, and there's nothing indicating it's not a thoroughfare, then the regulation is overbroad to the extent it applies to that. But this regulation is so extensive that it really- You can decide it on the basis of Jews for Jesus, which said that a ban on First Amendment activity that includes all species of conversation on a vague group of topics would be impermissibly unconstitutional in space without regard to the law. But isn't there a doctrine, though, that someone who challenges a regulation or a statute as unconstitutional on its face has to show that there's no conceivable application where it would be constitutional? That's the Salerno case, which has been recognized and abrogated by this court in Becker. And it's not a First Amendment case, but in practically all contexts, Salerno has been recognized as abrogated. And then I have one additional question, which is the question whether particular parts of a VA facility are public fora or private fora, isn't that something relating to as an applied challenge rather than a facial challenge? No, because our as applied challenge is limited to one single building. So the standard is whether there are a substantial number of public forums. But if you challenge something on its face, doesn't it mean that you don't look to see what happens when it's applied to a particular entity or a particular person? Yes, but this regulation can't be applied constitutionally anywhere. This is not the flag display. It can't be applied anywhere constitutionally? Well, it's already been held that it can be applied constitutionally in some aspects in a cemetery. Well, as to private conversations in a cemetery, the fact that you're overheard making a statement But again, that sounds to me as though it's an applied challenge. I mean, there's certainly some... You wouldn't have any question, would you, that the VA could properly apply this regulation to preclude trying to sign up a veteran to vote who is in the operating room awaiting anesthesia? They could prevent you from doing that, couldn't they? That's a different issue. No, but couldn't they do that? I mean, you say that there's no basis at all on which this regulation could be applied. It seems to me there's some situations where the regulation can be applied, and the question is whether it can fairly be and properly applied to your situation. And that, I suggest, seems to be more an applied challenge than a facial challenge. May I reserve some rebuttal time, or shall I? Please answer the question, and then we'll give you a little extra time. Thank you. The facial challenge, the fact that there is, is, one, I would agree with you that there are operating room situations... Or maybe others, but there are at least some situations. ...a rule such as this that could constitutionally be applied if it weren't for the fact that there's discretion, and it's the discretion and the unlimited extent of discretion that is the vice of this rule, which makes it constitutionally impermissible anywhere, and constitutively unnecessary and unrelated to any specific purpose. But, and there are simple alternatives to address what you suggested, but it's not enough that there's a single application where it works. If there is substantial over-breadth, then on its face the regulation is unconstitutional. And where we're talking about pure speech, not conduct, you're thinking about signing something involved in elemental conduct, where we're talking about pure words and thoughts and status being a Democratic Party official, that is, there doesn't have to be substantial over-breadth. Any over-breadth invalidates the statute on its face in its entirety. That would be the Colorado v. Hill case. Mr. Rafferty, we'll save three minutes of rebuttal time for you. Ms. Vanneman. Good afternoon. May it please the Court. Griffin does control this case at the points that Judge Shaw mentioned and a number of others. It controls with respect to, first of all, this Court's standard of review and the heavy burden that a petitioner making a facial challenge might be. Ms. Vanneman, what about, certainly the general propositions of standard review, but in addition to the parts of the opinion that I discussed a little bit with Mr. Rafferty, if you look at 288 Fed 3rd at 1324, it does say, turning to the nature and function of national cemeteries, we find that the government has established national cemeteries to serve particular commemorative and expressive roles, and then it goes on. There's that, number one, and number two, as far as I could tell, in the Griffin opinion, there is no discussion of the part of the regulation that's clearly at issue here, partisan activities, the last 35 words. So, what about, those two points seem to me to cut against your argument that Griffin controls here. With respect to the second point, the two judges in Griffin did discuss this part of the regulation relating to partisan activities at page 1329 in the third void for vagueness challenge that the petitioner in Griffin made, and basically said that the void for vagueness challenge was similar to the unbridled discretion challenge, and that a person of ordinary intelligence would understand what the term partisan activity means. So the court in Griffin did address that, having already decided that it could take a broad view of petitioner Griffin's challenge and evaluate the challenge not only with respect to the cemetery, but also with respect to VA property as a whole, because throughout the decision in Griffin, well, first of all, the majority said it would extend its analysis to the VA property as a whole, and then throughout the decision it often said we will focus on the cemetery, but in its conclusion said the VA property including cemeteries, which is a contrast in part to the Fourth Circuit's decision in Griffin that was an as-applied case where the Fourth Circuit did focus much more heavily on the cemetery. Are you saying that although Griffin said we're considering the facial challenge to this statute, we're also going to say a few words about an as-applied challenge? No, Griffin did not address the as-applied issues. Griffin relied on some Supreme Court law that allowed it to view the standing of the petitioner in a broad sense and consider the VA property as a whole. It did not look at the case with respect to the as-applied type of challenges. And its analysis was quite broad, for example, in deciding that here the discretion that the VA needed on its VA medical campuses and other properties that were under its control was important and contrasted it to a more objective criteria that can typically be used, for example, when the government has opened up its properties expressly for expressive speech. Suppose there had been a facial challenge to the regulations ban on the riding of bicycles on VA properties. Would you say that Griffin controls that? Griffin has established that the statute is constitutional on its face for all of its applications? I take it you would. Yes, because the Subsection 14 is captioned demonstrations, but basically parts little i and double little i basically say visitors are expected to observe decorum and decency and all kinds of activities including the ones listed are prohibited unless they're expressly authorized by the head of the facility. So the whole point of the Griffin broad constitutional analysis dealing with the three prongs of the challenge, the unbridled discretion, the procedures, and the avoid for vagueness issues went to the ability and the need for the VA to be able to control what conduct there is on its property. So in other words, the head of the Menlo Park operation could have authorized Mr. Griffin to do what he wanted to do. Or Mr. Kreminger, yes. Kreminger, I'm sorry, Mr. Kreminger. There's no standard though pursuant to which the authorizing person exercise that power. It doesn't say on what grounds. He can just I suppose say I'm going to keep you off. There's nothing wrong with what you're proposing to do but you're too loud. That's going to disturb some of the veterans. Well that was kind of like the Fentress case, the criminal case. There have been a couple of cases where the VA has applied criminal sanctions in an as-applied case. But more importantly your honor, the administrative record page 238 we have included the VA's guidelines from 2006 which are analogous to the flag manual in Griffin. While there are no real standards or guidelines in the regulation That's 238 of the appendix. It's the last page of the administrative record and that is the 2006 VA guidelines that are a little bit different but a little tighter than the 2004 guidelines which the VA attached to its first response Mr. Preminger which is at the administrative record beginning at 228 but and essentially it basically has these guidelines and the Griffin case again said that even unwritten guidelines that might provide standards are okay but we've said frequently that guidelines don't create any rights in litigants they're just advice to people on the staff how to go about your business. That's correct and nobody could you couldn't found a challenge to a refusal to grant permission on the ground that it would contravene the guidelines That's correct Your Honor. These guidelines are for the purposes of the VA facility heads who might be faced with requests for permission to conduct partisan activities or any other of the types of behavior listed in the reg or anything else that might come up because the regulation only provides examples that are things that are prohibited but it expressly says these examples are not limited to what is listed Let me ask you do you agree or disagree with what Mr. Rafferty said about the state of proceedings in the district court in California? I don't know Just as to the status of where it sits There was a trial, there were post-trial briefs it's completely up to the judge in that case I'm sure as to whether You don't have any disagreement with what he said about the status of the case Right, and there many of the as-applied types of arguments the petitioner has made in his brief to this court are being considered by the district court as well as additional types of issues that were tried The other thing that we discussed with Mr. Rafferty was the issue of the forum public designated or non-public and we have here an as-applied challenge and how does the court approach an as-applied challenge or how does a court apply the forum analysis in the case of an as-applied challenge where we have an agency with all kinds of  Are you speaking about a facial challenge? I'm sorry, you're absolutely right How does a court I had too many applies in there How does a court approach a facial challenge and apply the forum analysis when you have an agency with so many different facilities What facility do we look at? Do you understand what I'm saying? Yes, I do, your honor, and I think there are a variety of sources. One is case law You've got Griffin You have the Fentress which was a VA hospital What's that case? Fentress, we've cited it in our brief as a criminal case F-E-N-T-R-E-S-S Mr. Rafferty said that what we're dealing with here are what's relevant here are VA medical centers and veteran centers He offered the view that everything else well, and cemeteries put that aside, we've already discussed that He offered the view that the VA headquarters VA regional offices are not under the control of this regulation because they're run by GSA and that what we're concerned with solely are medical centers like the Menlo Park facility and veteran centers, I'm not exactly sure what that is, but what do you say about that? Well, the analysis would be, actually, your honor, from a case cited in Petitioner's reply brief this ACLU versus cities of Las Vegas, it's a Ninth Circuit case but other courts have adopted the same approach You look either to case law or the actual use and purposes of the property. Medical centers, the primary purpose is to, as for example in this case, building 331 which was the issue in the Kreminger District Court in the Ninth Circuit case was a facility of long-term nursing care for veterans who live there That's building 133? That's building 331 Oh, 331. I believe There are other buildings where veterans may come on an outpatient day-to-day basis for services There's apparently a homeless shelter on the Menlo Park campus. This court could take judicial notice of the forum that was described by the Kreminger cases in the Ninth Circuit. What would you do, though, in the case of a facility that has what the lay person would think of as having various aspects. In other words a street that goes through it that appears to be public, sidewalks and on the other hand, areas that are clearly non-public. Judge Friedman was discussing, for example operating rooms and other areas How do you... When you're dealing with a facial challenge and you've got facilities that have what we would all think of as having different aspects to them in terms of their characteristics, where does that leave us? In terms of the analysis. Right. In the analysis, Your Honor in our view, the entire VA campus is a non-public forum for even though the public is free to walk through it or drive through it or stand at the bus stop or walk on the sidewalk. There is other case law, actually from the Ninth Circuit, Monterey Bay, and then another case McConnell that we have cited where in Monterey Bay the court said that a political party could not conduct a voter registration drive on the sidewalk outside of a post office. Now the sidewalk outside of a post office is typically a public thoroughfare but for purposes of the First Amendment, it was not opened up by the government for public expression and the Postal Service, as does the VA here, have a keen interest in maintaining its political neutrality. Would you agree that what we have to consider here are medical centers and veteran centers? Are those the kinds of... Are those the cemeteries, medical centers, and veteran centers? Are those the things that we're talking about when we talk about VA facilities? Because what we have to deal with here are VA facilities, not HUD facilities or GSA facilities or whatever. So can we consider that those are the things we're concerned with? Yes, Your Honor, that would be a reasonable view of the kinds of VA properties that are... Couldn't another perhaps answer to Judge Shull's question be that in considering the facial challenge, we don't have to look to whether a particular aspect of the property is public or non-public that that's a matter to be taken up in the as applied challenge. Correct, Your Honor. To the extent there are any fuzzy edges with respect to physical boundaries of a particular property or a particular sidewalk, then clearly those can be dealt with more appropriately on an as applied challenge. And the Griffin Court said the same thing, that there are many situations that are far more appropriately addressed in an as applied challenge in a district court. And it's almost a cliche that someone who challenges the constitutionality of a statute or regulation on its face indeed has a heavy burden to establish that claim. Absolutely. And Griffin set that out as well and that there must be virtually no set of circumstances in which it would be valid. There are clearly many circumstances in which the regulation is valid. Another VA concern that I would want to mention is patient care at medical centers or medical facilities. And that was addressed in the VA's response to petitioner's request to rescind or waive the regulation. Okay, thank you Ms. Manaman. Mr. Rafferty, three minutes rebuttal. Mr. Rafferty, I had one sort of pounce on you there, but I did want to pick up on something if I could, please, that Ms. Manaman said. She said, she agreed, she stated, that as far as the government's concerned, for deciding this case, we should focus on medical centers and veterans centers. Are you comfortable with that structure? Let me say, all I know that is a GSA building for sure is the headquarters across the street and the San Francisco regional office is in a federal building and is managed by the GSA. Can we assume that regional offices, it would just make it, it would give us a good construct for the case if we could say VA facilities, whatever they may be like, are, for this case, are medical centers and veterans centers. It would make it a lot easier, but the problem here is this is a criminal statute and I have spent hours and hours trying to figure out which VA facilities are under GSA and which are subject to this regulation. I can't do it. From the standpoint of the public, this is not notice and this is a vague... But the part, I mean, so do you, are you willing, I mean, you're not willing to have us say that to decide the case that what we're dealing with here are medical centers and veterans centers because those we know are VA facilities. Well, when you say medical centers, you're talking about 38,000 acres and this includes homeless shelters where people are not getting medical care. Homeless shelters that are not even managed by the VA, but by lessees. But is it a VA facility? It's VA owned land. But is it a VA facility? Because this regulation applies to VA facilities, right? They're enforcing it there. So medical centers, and what is a veterans center? A veterans center, as I understand it, is generally an outpatient or benefit often in an urban environment where there are a series of counseling and beneficiary determinations made, but where there is not an attached hospital. Where could we find, and I guess it would be in a regulation or manual, where if anywhere could we find a statement of VA facilities? In other words, saying these are every reading room on 1010 Vermont Avenue. I have asked half a dozen different librarians precisely that question. But you would want us to decide with respect to VA controlled facilities. Yes. But whatever may be the outer reaches of this regulation, there's no question is there that the Menlo Park operation is a VA facility. Yes. It is a VA facility. It has streets that people drive in one way out the other. I want to be sure. You can see that whether or not the VA headquarters across the street from us is a VA facility, the Menlo Park operation entity, whatever it is, is a VA facility. You'd agree to that, wouldn't you? Yes. Including a homeless shelter where there's no medical care, no VA personnel, no VA management. It's run by a lessee. The two criminal cases that have been mentioned here do not involve any part of A14. They are disturbance cases under Section A5. No one has ever been prosecuted under this, but Mr. Preminger has been threatened with it. And it's the discretion to enforce this last 35 words, which is the content dependent part. This is not about loud noises or disorderly conduct. It's the fact that they have discretion to say, this political party, yes. This political party, no. And they've claimed in their own admissions that merely the fact that Mr. Preminger is a party official, even if he doesn't say a word, his mere status... Wouldn't that be the basis for a very good as-applied challenge? If a facility is just letting Democratic representatives on or Republican representatives on, then the other side would have a good as-applied challenge. Well, no, Your Honor, for two reasons. First of all, our as-applied challenge has been focused by one building. They've told us, if you want to go outside that one building, it's a facial challenge. We've been three years trying... No, I'm speaking generally. I mean, if somebody, if a VA facility has the practice of just, under this regulation, if they have a voter registration day, and they let a Republican booth be here and a Democratic booth be here and a women voters booth be here, nobody's going to have a problem, obviously. But if they just let Republicans come on or Democrats come on, then that's a good as-applied challenge, right? Well, except in this particular building... No, no, just generally. Generally? Yeah, wouldn't that be a good... I mean, I think once they enforce this against Mr. Preminger, he should have been allowed to seek an injunction against the entire regulation. And your role here is to set aside the words on the page and rip them out of the CFR. But I think that the Ninth Circuit erred in not allowing him, once there was an actual enforcement action, to assert that, oh, by the way, there's no way that this regulation could ever be enforced. But they interpreted differently, and they put everything in your court. So we're here with a First Amendment claim and essentially a ping-pong struggle. For example, Friedman. This is clearly under Friedman. This is a prior restraint based on content. And we should have gotten an almost immediate judicial determination in a court of competent jurisdiction. We've been at it for three years. So that's the problem. When we say Friedman, they say that's a facial thing because discretion is allowed and you have to go to the Federal Circuit to attack that. When I say Friedman, I look right. This is Friedman v. Maryland. Right. I think we have your argument. Mr. Rafferty, we'll take the case unrevised. Thank you. Thank you.